IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, and | ) | |
| THE STATE OF NEBRASKA | ) | |
| Plaintiffs, | ) | Civil Action No.  8:11-cv-216 |
| v. | ) | |
| SWIFT BEEF COMPANY | ) | |
| Defendant. | ) | |

## CONSENT DECREE

WHEREAS, Plaintiffs, the United States of America, on behalf of the United States

Environmental Protection Agency ("EPA"), and the State of Nebraska, on behalf of the Nebraska

Department of Environmental Quality ("NDEQ") (collectively Plaintiffs) have filed a Complaint

in this action against Defendant, Swift Beef Company (Defendant).

WHEREAS Defendant is a corporation organized and existing under the laws of the State

of Delaware and authorized to conduct business in the State of Nebraska.

WHEREAS at all times relevant here, Defendant has owned and operated a meat

processing plant ("the Facility") for beef in Grand Island, Nebraska ("the City").

WHEREAS on January 1, 2004, the NDEQ issued to Defendant a National Pollutant

Discharge Elimination System ("NPDES") permit, Permit Number NE0113891, ( "2004

Permit") pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, which permitted Defendant to

discharge facility wastewater from its plant to the City's publicly owned treatment works ("

POTW") for treatment, located within the southern half of Section 14, Township 11 North,

Range 9 West, Hall County, Grand Island, Nebraska, which in turn discharges wastewater to the Wood River.

WHEREAS Defendant's 2004 Permit also authorized it to discharge non-contact cooling water directly to a drainage ditch, which empties into the Wood River.  All of the discharges authorized by the 2004 permit were subject to certain conditions and limitations set forth in the permit.  The 2004 Permit expired on December 31, 2008 and NDEQ issued a new NPDES Permit on May 1, 2009 (" 2009 Permit").  The 2009 permit also authorizes Defendant to discharge to the POTW and Wood River subject to certain conditions and limitations set forth in the new permit.

WHEREAS, the Defendant's facility in Grand Island, Nebraska is a user or industrial user, as defined by 40 C.F.R. § 403.3(j) and 33 U.S.C. § 1362(18), of the City of Grand Island's POTW, and discharges non-domestic pollutants thereto, as defined at 33 U.S.C. § 1362(6).

WHEREAS, the Complaint alleges that during the time period of July of 2007 through March of 2008, the Defendant violated  the Federal Water Pollution Control Act, commonly referred to as the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq.; including the General Pretreatment Regulations found at 40 C.F.R. Part 403, and Sections 301(a), 307(d) and 309(d) of the CWA, 33 U.S.C. §§ 1311(a), 1317(d), 1319(d), and Title 119, Chapter 26, Section 002.01 of the Nebraska Administrative Code, by introducing pollutants into the City's POTW resulting in pass-through of pollutants or interference with the operations of the POTW which contributed to the discharge of pollutants from the POTW in excess of the numeric and narrative effluent limitations set forth in the City's NPDES permit;

**Swift Consent Decree Page 2.**

WHEREAS the Complaint alleges that from January of 2006 through September of 2007, Defendant violated Section 309(d) of the CWA, 33 U.S.C. § 1319(d) and Neb. Rev. Stat. 81-1508.02(1)(b) by failing to report excess discharges as required by the Defendant's 2004 Permit.

WHEREAS the Complaint alleges that on April 22, 2008 and on several occasions from May, 2009 to February, 2010 Defendant violated Sections 301(a) and 309(b) of the CWA, 33U.S.C. §§ 1311(a), 1319(d), and Neb. Rev. Stat. § 81-1508.02(1)(b) by discharging wastewater directly to the Wood River in violation of conditions and limitations in the Defendant's 2004  and 2009 permits.

WHEREAS the Complaint alleges that Defendant violated Neb. Rev. Stat. § 81-1508.02(1)(b) by failing to comply with an Emergency Order issued by the State of Nebraska on or about April 14, 2008, which required Defendant to meet certain effluent limitations on the discharge being sent to the POTW.   This Emergency Order became final on April 14, 2008 and was in effect to May 1, 2009.

WHEREAS the Complaint alleges that on or about March 28, 2008, the Defendant caused the death of fish while failing to perform its duty as set out in Title 119, Chapter 26, Section 002.0 and the costs to restock the waters of the state with replacement fish and clams is determined to be $4,704.59 (four thousand seven hundred four dollars and fifty nine cents).

WHEREAS, prior to negotiations to resolve alleged violations of the Clean Water Act and Nebraska's Statute, the Defendant started the design and construction of and during negotiations completed the design and construction of and is currently operating and maintaining a new 25 million gallon anaerobic lagoon treatment system to increase treatment capacity.

**Swift Consent Decree Page 3.**

WHEREAS, during negotiations to resolve alleged violations of the Clean Water Act and Nebraska's Statute, the Defendant completed the design and installation of and is currently operating and maintaining a new system of centrifuges to process grease and address alleged violations associated with its Dissolved Air Flotation unit.

WHEREAS subsequent to the change in ownership of Swift in July of 2007, Defendant has made substantial capital expenditures, and completed numerous projects, to enhance the environmental compliance and performance of the Facility.

WHEREAS Defendant does not admit any of the violations alleged by Plaintiffs in the Complaint or that it has liability with respect to such allegations. Defendant specifically denies each of the alleged violations and denies that it has any liability with respect to such allegations.

WHEREAS the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, and without any admission of fact or law, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355; Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and over the Parties.  Venue lies in the District of Nebraska pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b) because Defendant is located in this judicial district and the violations alleged in the Complaint are alleged to have occurred in this judicial district.  For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to the

**Swift Consent Decree Page 4.**

Court's jurisdiction over this Consent Decree or such action and over Defendant, and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 301, 307 and 309 of the Clean Water Act, 33 U.S.C. §§ 1311, 1317 and 1319.

## II. **APPLICABILITY**

3.      The obligations of this Consent Decree apply to and are binding upon the United States, the State of Nebraska and upon Defendant and any successor or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.  At least thirty (30) Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed transfer agreement, to EPA, the United States and the State, in accordance with Section XIV of this Decree (Notices).  The transfer agreement is not subject to EPA or the State's approval except that any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents of Defendant whose duties might reasonably include compliance with any provision of this Consent Decree.

**Swift Consent Decree Page 5.**

6.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, successors, assigns, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.  DEFINITIONS

7.     Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated thereunder shall have the meanings assigned to them in the CWA or such regulations, unless otherwise provided in this Consent Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "2009 Permit" shall mean the National Pollution Discharge Elimination System/ Nebraska Pretreatment Permit, Permit No. NE0113891, issued to Swift on May 1, 2009 including any modifications thereto or successor permits.

b.     Consent Decree or Decree shall mean this Decree.

c.     DAF Float or Dissolved Air Flotation Float shall mean solid material which is suspended after dissolved air is released at atmospheric pressure in a flotation tank which holds wastewaters.

d.     Date of Lodging shall mean the date that this Consent Decree is filed with the Court prior to the commencement of the public comment period pursuant to Section XIX.

e.     Day shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

f.     Defendant shall mean Swift Beef Company.

**Swift Consent Decree Page 6.**

f.        EPA shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

g.        Facility shall mean the beef processing plant owned and operated by Defendant located at 555 South Stuhr Road, Grand Island, Hall County, Nebraska, as of the Date of Lodging, and any associated equipment including conduits through which it discharges effluent from the plant to the Wood River and POTW.

h.        Grand Island or City means the City of Grand Island, Nebraska.

i.        Interest with respect to payments to the United States shall mean the interest rate established by the Secretary of the Treasury, pursuant to 28 U.S.C. §1961 and Interest with respect to payments to the State shall mean the rate set forth in Neb. Rev. Stat. § 45-103.

j.        NDEQ shall mean the Nebraska Department of Environmental Quality and any successor departments or agencies of the State of Nebraska.

k.        NPDES shall mean the National Pollutant Discharge Elimination System authorized under Section 402 of the Act, 33 U.S.C. § 1342.

l.        Paragraph shall mean a portion of this Consent Decree identified by an Arabic numeral.

m.        Parties shall mean the United States, the State of Nebraska and Defendant.

n.        Publicly Owned Treatment Works or POTW shall mean a publicly owned treatment works or POTW as defined in 40 C.F.R. § 403.3(q), and includes the City's Wastewater Treatment Plant (WWTP) and all aspects of the conveyance of wastewater from industrial dischargers to the City's WWTP.

**Swift Consent Decree Page 7.**

g.      Section shall mean a portion of this Consent Decree identified by a Roman numeral.

h.      State shall mean the State of Nebraska on behalf of NDEQ.

i.      Swift shall mean Defendant Swift Beef Company.

j.      United States shall mean Plaintiff, the United States of America, including EPA.

### IV.  CIVIL PENALTY AND DAMAGES

8.      Defendant shall pay the total sum one million two hundred thousand dollars ($1,200,000) as a civil penalty for its violations of the Clean Water Act to be divided equally between the United States and State and to be paid pursuant to subparagraphs a. and b. below

a.      Payment of Clean Water Act Penalty to the United States.  No later than thirty (30) days after the Effective Date of this Consent Decree, Defendant shall pay $600,000 with Interest calculated from the Date of Lodging by FedWire Electronic Funds Transfer (EFT) to the U.S. Department of Justice in accordance with instructions to be provided to Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Nebraska following lodging of the Consent Decree.  Any payments received by the United States after 4:00 p.m. Eastern Time shall be credited on the next business day.  At the time of payment, Defendant shall simultaneously send written notice of payment and a copy of any transmittal documentation, which should reference DOJ case number 90-5-1-1-09466 to the United States and EPA in accordance with Section XIV of this Consent Decree (Notices).

**Swift Consent Decree Page 8.**

b.      <u>Payment of Clean Water Act Penalty to the State</u>.   No later than thirty

(30) days after the Effective Date of this Consent Decree, Defendant shall pay to the State

$600,000 as a civil penalty pursuant to Neb. Const. art. VII, sec. 5.

(1)      Payment of $300,000 shall be made payable to the Hall County

District Court Clerk and shall be mailed with notice referring to this action, to:

> Katherine J. Spohn
> Special Counsel to the Attorney General
> 2115 State Capitol
> Lincoln, NE 68508-8920

(2)      Payment of $300,000 shall be made into an escrow account to be

created and maintained by Defendant.   The escrow agreement for this escrow account shall

specify that the funds in this account, including any interest earned on such funds, may only be

used by the City of Grand Island for construction of a sewer line extension along Highway 281

from approximately the Platte Valley Industrial Park to the south side of Interstate 80 ("Sewer

Line Extension").  The City shall use the funds for such extension project within one year after

the Effective Date of this Consent Decree.  Within thirty (30) days after the one year anniversary

of the Effective Date, Swift shall propose one or more projects for the purposes of environmental

stewardship, safety, training, public awareness, public recreation or other related uses, for the

benefit of the City of Grand Island, as permitted by State law.  Any such projects are subject to

the approval of the Nebraska Attorney General.  Any remaining funds in the escrow account,

including any interest earned on such funds, shall be paid to the City of Grand Island solely to be

used for such approved projects.

**Swift Consent Decree Page 9.**

9.      <u>Payment of Penalties and Damages for Other State Claims</u>.   In addition to the penalties set forth in Paragraph 8 above, within thirty (30) days of the Effective Date, Defendant shall make the following payments to the State by the methods specified below.

a.      <u>Penalties for Violation of State Administrative Order</u>.   Defendant shall pay to the State $50,000 as a civil penalty pursuant to Neb. Const. Art. VII, Sec. 5.   This payment shall be made by sending a check payable to the Hall County District Court Clerk and shall be mailed, with notice referring to this action, to:

> Katherine J. Spohn
> Special Counsel to the Attorney General
> 2115 State Capitol
> Lincoln, NE 68508-8920

Defendant shall pay an additional $50,000 to the escrow account provided for in Paragraph 8.b.(2) above for use by City of Grand Island for construction of the sewer line extension, or other approved projects, under the same conditions as set forth in Paragraph 8.b.(2) above.

b.      <u>State Damages</u>, Defendant shall also pay to the State of Nebraska $4,704.59 (four thousand seven hundred four dollars and fifty nine cents), the amount necessary to restock the waters of the state with replacement fish and clams as determined by the Director of the Department of Environmental Quality, after consultation with the Game and Parks Commission as authorized by Neb. Rev. Stat. §81-1508(1).   Payment shall be made payable to the "Nebraska Game and Parks Commission" and shall be made with notice referring to this action, to:

> Katherine J. Spohn
> Special Counsel to the Attorney General
> 2115 State Capitol
> Lincoln, NE 68508-8920

**Swift Consent Decree Page 10.**

10. <u>Interest on State Penalties and Damages.</u>  In addition to the stipulated penalties set forth below, in the event Defendant fails to make timely payments of any amount required to be paid to the State under this Decree, including stipulated penalties, Defendant shall pay Interest on the unpaid balance.   The interest shall be calculated from the first day following the final due date for these payments, until the entire outstanding balance has been received.

11. Defendant shall not deduct the civil penalty paid under this Section in calculating its federal and State income tax.

## V. COMPLIANCE REQUIREMENTS

12. <u>General Compliance with NPDES Permit.</u>   Defendant shall comply with all requirements, conditions and limitations set forth in the 2009 Permit.

13. <u>Direct Discharges from the Facility to the Grand Island Utility Ditch Industrial Ditch or the Wood River</u>.  Defendant shall fully comply with the final ammonia as nitrogen limits in the 2009 Permit by no later than December 31, 2012**.**

14. <u>Dissolved Air Flotation Float ("DAF Float")</u>.

a,  Defendant is currently using a system of centrifuges to process all DAF Float at the Facility.  Defendant shall properly operate and maintain the system of centrifuges unless it complies with subparagraphs b. c. and d. below.

b.   In the event Defendant is unable to process all DAF Float by use of its centrifuges for any reason, Defendant may elect to

(i)  land apply the DAF Float in compliance with the Sludge Disposal requirements in Part III of its NPDES/Npp Permit No. NE0113891 and subject to the requirements of 40 C.F.R. Part 257, NDEQ Title 119 and NDEQ Title 126; or

**Swift Consent Decree Page 11.**

(ii)  compost the DAF Float in accordance with the requirements of NDEQ Title 132; or

(iii)   register that DAF Float as a soil conditioner pursuant to Neb. Rev. Stat. Sec. 81-2, 162.01 et seq. and subject to the requirements of that Act; or

(iv)  handle the DAF Float in a digester subject to the requirements of any permits issued for operation of the digester and the conditions of its NPDES/NPP Permit No. NE0113891.

c.      Prior to disposing of DAF Float, Defendant shall store DAF Float in a contained structure for no more than 180 (one hundred and eighty) days.

d.      Defendant shall not dispose of DAF Float by any means other than the use of centrifuges or one of the methods listed in (i) through (iv) above, unless Defendant has submitted for approval to Plaintiffs an alternative method for handling DAF Float and that alternative method has been approved by Plaintiffs.

## VI.  <u>APPROVAL OF DELIVERABLES</u>

15.     After review of any plan, report, proposal, alternative disposal method or other item (generically submission) that is required to be submitted to EPA and NDEQ pursuant to this Consent Decree, EPA and NDEQ shall in writing:

a.      approve the submission;

b.      approve the submission upon specified conditions;

c.      approve part of the submission and disapprove the remainder; or

d.      disapprove the submission.

**Swift Consent Decree Page 12.**

16.     If the submission is approved pursuant to Paragraph 15.a., Defendant shall take all actions required by the plan, report, proposal or other document, in accordance with the schedules and requirements of the plan, report, proposal or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 15.b. or c., Defendant shall, upon written direction from EPA and NDEQ, take all actions required by the approved plan, report, proposal or other item that EPA and NDEQ determine are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, or the decision that the disapproved portions are technically severable under Section X of this Decree (Dispute Resolution).

17.     If the submission is disapproved in whole or in part pursuant to Paragraph 15.c. or d., Defendant shall, within forty-five (45) Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

18.     Any stipulated penalties applicable to the original submission, as provided in Section VIII of this Decree, shall accrue during the forty-five (45) Day period or other specified period, but shall not be payable unless the re-submission is untimely or is disapproved in whole or in part; provided that, if the original submission was not submitted in good faith, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent re-submission.

**Swift Consent Decree Page 13.**

19.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA or NDEQ may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself/themselves correct any deficiencies, subject to Defendant's right to invoke Dispute Resolution and the right of EPA and NDEQ to seek stipulated penalties as provided in the preceding Paragraphs.

## VII.  REPORTING REQUIREMENTS

20.     Within thirty (30) Days after the end of each quarter after lodging of this Consent Decree, until termination of this Decree pursuant to Section XVIII, Defendant shall submit to EPA and NDEQ a report for the preceding quarter that shall include:

        a.     A summary on the progress in implementing Paragraphs 12-14 above;

        b.     A description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) Days of the Day Defendant becomes aware of the cause of the violation.

21.     Whenever any violation of this Consent Decree or any applicable permits or any other event affecting Defendant's performance under this Decree at the Facility may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and NDEQ orally or by electronic or facsimile transmission as soon as possible, but no later than

**Swift Consent Decree Page 14.**

twenty-four (24) hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

22.     All reports shall be submitted to the persons designated in Section XIV of this Consent Decree (Notices).

23.     Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical including Paragraph 19.

24.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Clean Water Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement, or of the requirement to report force majeure events pursuant to Section IX.

25.     Any information provided pursuant to this Consent Decree may be used by the United States or State in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

### VIII.  <u>STIPULATED PENALTIES</u>

**Swift Consent Decree Page 15.**

26.     Defendant shall be liable for Stipulated Penalties to the United States and the State for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

27.     If Defendant fails to remit the payment as required under Section IV of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $5000 per day for each day that the payment is late, together with Interest on the unpaid civil penalty in accordance with Paragraphs 8-9 from the date when payment was due.

28.     The following stipulated penalties shall accrue per violation per day for each violation of Defendant's 2009 Permit as follows:

a.     Unpermitted Discharges or Discharges in Excess of Permit Effluent Limits:

| Type and Number of Violations | Penalty Per Violation |
|---|---|
| Daily Max Effluent Limit  (for first nine violations of a specified limit) | $1500 |
| Daily Max Effluent Limit (for the 10th through 20th violations of a specified limit) | $2000 |
| Daily Max Effluent Limit (for the 21st and subsequent violations of a specified limit) | $3000 |
| Monthly Avg. Effluent Limit | $3000 |

For any violation that is equal to or greater than 300% of the effluent limit, Defendant shall be subject to an alternative penalty of $10,000.   Failure to conduct a test required to assess

**Swift Consent Decree Page 16.**

compliance with a discharge limit shall constitute a violation of the appropriate limit, however, if Defendant is assessed a stipulated penalty under this subparagraph a. for failure to conduct a test required to assess compliance, it shall not be liable for a stipulated penalty under subparagraph c. below.   No Stipulated Penalties shall accrue for discharges of ammonia in excess of the limit in the 2009 Permit that occur before December 31, 2012.   The stipulated penalties shall not apply to the extent that Defendant successfully establishes any defenses under the Clean Water Act or the 2009 Permit.

        b.      Interference/Pass through

| Type and Number of Violations | Penalty Per Violation |
|---|---|
| First Nine Violations | $2000 |
| 10th through 20th Violation | $3000 |
| 21st and Subsequent Violations | $4000 |

        c.      Monitoring/Sampling

| Type and Number of Violations | Penalty Per Violation |
|---|---|
| First Nine Violations | $2000 |
| 10th through 20th Violations | $3000 |
| 21st and Subsequent Violations | $4000 |

        d.      Reporting

**Swift Consent Decree Page 17.**

| Type and Number of Violations | Penalty Per Violation |
|---|---|
| First Nine Violations | $1000 |
| 10th through 20th Violations | $2000 |
| 21st and Subsequent Violations | $4000 |

      e.      Other Permit Violations

| Type and Number of Violations | Penalty Per Violation |
|---|---|
| First Nine Violations | $1000 |
| 10th Through 20th Violations | $2000 |
| 21st and Subsequent Violations | $4000 |

29.      The following stipulated penalties shall accrue per violation per day for each violation of the requirements in Paragraph 14 relating to the handling of DAF Float:

| Days of Violation | Penalty Per Violation Per Day |
|---|---|
| 1st through 14th day | $1000 |
| 15th through 30th day | $2000 |
| 31st day and beyond | $5000 |

In the event that Defendant submits a proposal for an alternative disposal method to Plaintiffs

**Swift Consent Decree Page 18.**

pursuant to Paragraph 14.d. above and the Plaintiffs have not responded within forty-five (45) days of when the proposal is submitted, stipulated penalties shall not accrue for disposals made in accordance with the proposed alternative method during the time period between the 45th day following submission of the proposal to Plaintiffs and the day that Plaintiffs approve or disapprove the proposed alternative method.

30.    The following stipulated penalties shall accrue per violation per day for each violation of any the reporting requirements in Section VII of this Consent Decree:

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| 1st through 14th day | $500 |
| 15th through 30th day | $1000 |
| 31st day and beyond | $2000 |

31.    The following stipulated penalties shall accrue per violation per day for each violation of any requirement in this Consent Decree not addressed by Paragraphs (27-30) above:

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| 1st through 14th day | $1000 |
| 15th through 30th day | $2000 |
| 31st day and beyond | $5000 |

32.    Defendant shall pay stipulated penalties to the United States and the State within

**Swift Consent Decree Page 19.**

thirty (30) Days of receiving a written demand by either Plaintiff. Defendant shall pay fifty percent (50%) of the total stipulated penalty amount due to the United States and fifty percent (50%) to the State. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff. In the event that a separate demand for the same violation(s) is sent to Defendant by both the State and EPA, Defendant shall only be liable for the total stipulated penalty applicable to each violation in accordance with Paragraphs 27-31 above.

33. Stipulated penalties shall continue to accrue as provided in Paragraph 49, during any Dispute Resolution, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of the United States and the State that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with Interest, to the United States and State within thirty (30) Days of the effective date of the agreement or the receipt of the United States and the State's decision or order.

b. If the dispute is appealed to the Court and the United States and the State prevail in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with Interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c. If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

34. Method of Payment for Stipulated Penalties.

**Swift Consent Decree Page 20.**

a.      Stipulated penalties owing to the United States of under $10,000 will be paid by check and made payable to "U.S. Department of Justice," referencing DOJ # 90-5-1-1-09466 and delivered to the U.S. Attorney's Office for the District of Nebraska 1620 Dodge Street, Suite 1400, Omaha, Nebraska 68102-1506.   Stipulated penalties owing to the United States of $10,000 or more and stipulated penalties owing to the Applicable State Parties will be paid in the manner set forth in Section IV (Civil Penalty) of this Consent Decree for each such Party.  All transmittal correspondence shall state that the payment is for stipulated penalties, shall identify the violations to which the payment relates, and shall include the same identifying information required by Paragraphs 8-9.

b.      Payment to the State shall be made payable to the Hall County District Court Clerk and shall be mailed with notice referring to this action, to:

> Katherine J. Spohn
> Special Counsel to the Attorney General
> 2115 State Capitol
> Lincoln, NE 68508-8920

35.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for Interest on such penalties, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States or State from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

36.     Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States and the State for Defendant's violation of this Consent Decree or applicable law.  Where a violation

**Swift Consent Decree Page 21.**

of this Consent Decree is also a violation of the CWA, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

### IX.  FORCE MAJEURE

37.     Force majeure, for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise best efforts to fulfill the obligation includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  Force Majeure does not include Defendant's financial inability to perform any obligation under this Consent Decree.

38.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to Katherine J. Spohn, Special Counsel to the Attorney General, 2115 State Capitol, Lincoln, NE 68508-8920 and Audrey Asher, Senior Counsel, EPA Region 7, 901 N. 5th Street, Kansas, City, KS 66101 within seventy-two (72) hours of when Defendant first knew that the event might cause a delay.  Within seven (7) Days thereafter, Defendant shall provide in writing to the United States and State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's

**Swift Consent Decree Page 22.**

rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or reasonably should have known.

39.     If the United States and the State agree that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. The United States and the State will notify Defendant in writing of new date by which the obligation affected by the force majeure event must be performed.

40.     If the United States and the State do not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States and the State will notify Defendant in writing of their decision.

41.     If Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than fifteen (15) Days after receipt of Plaintiffs'

**Swift Consent Decree Page 23.**

notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be required  under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraph 38 above. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.  DISPUTE RESOLUTION

42.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

43.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States and the State a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States and the State shall be considered binding unless, within twenty (20) Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

**Swift Consent Decree Page 24.**

44.   <u>Formal Dispute Resolution</u>.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States and the State a written Statement of Position regarding the matter in dispute.  Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

45.   The United States and the State shall serve their Statement of Position within forty-five (45) Days of receipt of Defendant's Statement of Position.  The United States and State's Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States and State.  The United States' and State's Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

46.   Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States and State, in accordance with Section XIV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within ten (10) Days of receipt of the United States' and State's Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

47.   The United States and State shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to

**Swift Consent Decree Page 25.**

the extent permitted by the Local Rules.

    48.   <u>Standard of Review</u>

       a.   <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, any dispute brought under Paragraphs 43-47  that pertains  to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA and/or NDEQ under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, shall be reviewed based solely on the administrative record and Defendant shall have the burden of proof to demonstrate that its position is correct under applicable principles of administrative law.  In such a dispute, Plaintiff reserves the right to argue that under applicable principles of administrative law and Defendant has the burden of demonstrating, based on the administrative record, that the position of the United States and State is arbitrary and capricious or otherwise not in accordance with law.

       b.   <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraphs 43-47,  the dispute shall be accorded review under applicable principles of administrative law.

    49.   The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 33.  If

**Swift Consent Decree Page 26.**

Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.  INFORMATION COLLECTION AND RETENTION

50.     The United States and the State and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials and in complying with Defendant's reasonable requirement regarding health and safety issues, to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States or the State in accordance with the terms of this Consent Decree;

c.     obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.     obtain documentary evidence, including photographs and similar data; and

e.     assess Defendant's compliance with this Consent Decree.

51.     Upon request, Defendant shall provide Plaintiffs' or their authorized representatives splits of any samples taken by Defendant.  Upon request, Plaintiffs shall provide Defendant splits of any samples they have taken.

52.     Until  three (3) years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's

**Swift Consent Decree Page 27** .

performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or State, Defendant shall provide within a reasonable time copies of any non-privileged documents, records, or other information required to be maintained under this Paragraph.

53.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and the State at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, Defendant shall deliver any such documents, records, or other information to the United States or the State. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant.  However, no documents, records, or other information required to be created or generated pursuant under this Consent Decree shall be withheld on grounds of privilege

54.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information (CBI).  As to any information that Defendant produces to EPA that it seek to protect as CBI, Defendant shall follow the procedures

**Swift Consent Decree Page 28.**

set forth in 40 C.F.R. Part 2.  As to any information that Defendant produces to the State that it seeks to protect as CBI, Defendant shall follow the procedures set forth in Nebraska Public records Act, 84-712 et seq.; and the Nebraska Administrative Code Title 115 Chapter 4.55.

55.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, permits or Defendant's right to protect those documents, records or other information.

## XII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

56.     This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action through the Date of Lodging.

57.     Notwithstanding Paragraph 56 above, the United States and State reserve, and this Consent Decree is without prejudice to, their right to institute a claim against Defendant with respect to all matters other than those expressly specified in Paragraph 56 including, but not limited to, the following:

a.     claims based on a failure of Defendant to meet a requirement of this Consent Decree;

b.     claims for criminal liability;

c.     claims for natural resource damages based on the violations alleged in the Complaint; and

d.     claims arising from past, present, or future discharges of pollutants other

**Swift Consent Decree Page 29.**

than those alleged in the Complaint.

58.     The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated herein.  This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 56.  The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

59.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, other appropriate relief relating to the Facility, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 56 of this Section.

60.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree or with any action or

**Swift Consent Decree Page 30.**

omission approved by EPA or NDEQ pursuant to this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, or with any other provisions of federal, State, or local laws, regulations, or permits.

61.     This Consent Decree does not limit or affect the rights of Defendant or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

62.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.  COSTS

63.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIV.  NOTICES

64.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed to the recipients as set forth below.

Notices and Submissions to the United States:  Where this Consent Decree requires that notices and submissions are to be made to the United States, they shall be made to the United

**Swift Consent Decree Page 31.**

States Department of Justice and EPA.  Where the Consent Decree Requires that Notices and Submissions shall be made to EPA, they need only be sent to EPA.

To the United States Department of Justice:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-1-1-08078/2

To EPA:

Paul T. Marshall, P.E.
Water, Wetlands and Pesticides Division
U.S. Environmental Protection Agency, Region 7
901 North 5th Street
Kansas City, Kansas 66101

Audrey Asher
Senior Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 7
901 North 5th Street
Kansas City, Kansas 66101

Notices and Submissions to the State of Nebraska:  Where this Consent Decree requires that notices and submissions are to be made to the State of Nebraska, they shall be made to the Nebraska Attorney General's Office and NDEQ.  Where the Consent Decree Requires that Notices and Submissions shall be made to NDEQ, they need only be sent to NDEQ.

To the State of Nebraska Attorney General's Office

Katherine J. Spohn
Special Counsel to the Attorney General
2115 State Capitol
Lincoln, NE 68509-8920

To NDEQ

Steve Goans
Nebraska Department of Environmental Quality
1200 N Street, Suite 400

**Swift Consent Decree Page 32.**

PO Box 98922
Lincoln, NE 68509-8922

<u>To Defendant</u>:

JBS USA Holdings, Inc.
Attn: Legal Department
1770 Promontory Circle
Greeley, CO 80634

Steven P. Case
McGrath North Mullin & Kratz, PC LLO
1601 Dodge St., Ste. 3700
Omaha, NE 68102
Fax: 402-341-0216
Email: scase@mcgrathnorth.com

65.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

66.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.  <u>EFFECTIVE DATE</u>

67.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.  <u>RETENTION OF JURISDICTION</u>

68.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XVII below, or effectuating or enforcing compliance with the terms of this Decree.

**Swift Consent Decree Page 33.**

## XVII.  <u>MODIFICATION</u>

69.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.  Non-material modifications of the Decree may be made only by written agreement of the Parties, and will become effective upon their filing with the Court.

70.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section X of this Decree (Dispute Resolution), provided, however, that instead of the burden of proof provided by Paragraph 48, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.  <u>TERMINATION</u>

71.    This Consent Decree may be terminated three (3) years after the Date of Entry provided that Defendant has satisfactorily complied with the requirements of this Consent Decree.  At that time and under that condition Defendant  may serve upon the United States and the State a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

72.    Following receipt by the United States and the State of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States and the State agree

**Swift Consent Decree Page 34** .

that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

73.     If the United States and State do not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section X of this Decree.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination under Section X, until sixty (60) days after service of its Request for Termination.

## XIX.  PUBLIC PARTICIPATION

74.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XX.  SIGNATORIES/SERVICE

75.     Each signatory to this Consent Decree certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

76.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

**Swift Consent Decree Page 35.**

77.     Defendant agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree.

78.     Defendant shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on behalf of Defendant with respect to all matters arising under or relating to this Consent Decree.  Defendant agrees to accept service of process by mail and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  The Parties agree that the Defendant need not file an answer to the Complaint in this action unless or until this Court expressly declines to enter this Consent Decree.

## XXI.  INTEGRATION

79.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XXIII.  FINAL JUDGMENT

80.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State and Defendant. The Clerk of the Court is directed to terminate this case for statistical purposes.

**Swift Consent Decree Page 36.**

Dated and entered this __29th__ day of __July_____, 2011

_s/Laurie Smith Camp_____
UNITED STATES DISTRICT JUDGE
District of Nebraska

FOR PLAINTIFF UNITED STATES OF AMERICA:

Date: 6/9/11

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division

Date: 6/15/11

ELIZABETH LOEB
Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-8916
Fax: (202) 514-4080
Elizabeth.Loeb@usdoj.gov

**Swift Consent Decree Page 38.**

FOR PLAINTIFF UNITED STATES OF AMERICA (continued):

Date: 6/6/11

DEBORAH R. GILG
United States Attorney
District of Nebraska

Date: June 6 2011

s/LAURIE A. KELLY
LAURIE A. KELLY, MA. Bar # 557575
Assistant United States Attorney
District of Nebraska
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
Telephone 402-661-3700
Fax 402-661-3081
laurie.kelly@usdoj.gov

**Swift Consent Decree Page 39.**

FOR PLAINTIFF THE UNITED STATES OF AMERICA (continued):


Date: _6/2/11_                     _____
                                   KARL BROOKS
                                   Regional Administrator
                                   U.S. Environmental Protection Agency, Region 7


Date: _May 27, 2011_               _____
                                   AUDREY ASHER
                                   Senior Counsel
                                   U.S. Environmental Protection Agency, Region 7
                                   901 N. 5th Street
                                   Kansas City, Kansas 66101


**Swift Consent Decree Page 40.**

FOR THE PLAINTIFF UNITED STATES OF AMERICA (continued):

Date: 6/1/11

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 6/3/11

ADAM M. KUSHNER
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 5-23-11

MARK POLLINS
Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 05/23/11

CATE TIERNEY
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

**Swift Consent Decree Page 41.**

FOR THE STATE OF NEBRASKA:

Date: *May 18, 2011*                    *Katherine J Spohn*
                                        KATHERINE J. SPOHN
                                        Special Counsel to the Attorney General
                                        Office of the Nebraska Attorney General
                                        2115 State Capitol
                                        Lincoln, NE 68509-8920
                                        Nebraska Bar Number 22979
                                        (402) 471-2682
                                        Email: katie.spohn@nebraska.gov

**Swift Consent Decree Page 42.**

FOR DEFENDANT SWIFT BEEF COMPANY:

Date: 5/18/11

Bill Rupp, Head of Beef and Hides
Swift Beef Company
1770 Promontory Circle
Greeley, CO 80634
970-506-8000
Bill.rupp@jbssa.com

Agent Authorized to Accept Service on Behalf of Swift Beef Company Relating to this Consent Decree:

Nicholas White
Swift Beef Company
1770 Promontory Circle
Greeley, Colorado  80634